UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: May 8, 2020

TIMO PLATT, and GORDON PLATT, *as co-trustees of the Platt Family Artwork Trust*,

                                        Plaintiffs,

                    – against –

ALLEN MICHAAN,

                                        Defendant.

**AMENDED**

**OPINION AND ORDER**

19 Civ. 4234 (ER)

Ramos, D.J.:

        Timo and Gordon Platt, as co-trustees for the Platt Family Artwork Trust (the "Trust"),

brought this action against Defendant Allen Michaan ("Michaan") to recover two paintings.

Michaan now moves to dismiss this action on the basis that plaintiffs have failed to adequately

plead ownership of, or a superior right to the paintings.  Michaan's motion to dismiss is

DENIED.

I.    **BACKGROUND**[1]

        The two paintings at issue are "Market Day at Nuremberg," and "In the Fields of

Irvington" (collectively the "Nuremberg Paintings").  *Id.* ¶ 1.  They were created more than a

hundred years ago by the renowned artist Louis Tiffany.  *Id.* ¶ 9.  Louise Platt ("Louise"),

granddaughter of the artist, held the two paintings at the time of her death in 1992.  *Id.*  Prior to

her taking possession, the paintings had been held in the Platt Family for two generations.  *Id.*

When Louise died in 1992, she left the Nuremberg Paintings, along with other paintings created

by her grandfather, to be divided among her three sons — Henry, Thomas, and Graham

---

[1] The following facts are drawn from the Complaint, Doc. 1.

(collectively the "Platt brothers"), allegedly for their lifetimes. *Id.* ¶ 10. The division was subject to the direction and approval of Thomas, the named executor of Louise's will. *Id.*

According to plaintiffs, the Platt brothers understood that their right to the paintings was limited to custody during their lifetime, that the paintings belonged to "the Family," and that none of the paintings would be sold or otherwise transferred outside the Family. *Id.* ¶ 11. The Platt brothers also understood that their life estates in the paintings would end upon their death, after which the paintings in their custody would be returned to and remain in the "Platt Family." *Id.* These understandings and an anti-alienation restriction were set forth in a letter[2] from Thomas, as executor of Louise's estate, to Henry and Graham:

> Under…Mother's Will, all of her tangible personal property is bequeathed equally to the three of us to be divided among us as we shall agree or, should we fail to agree upon such division, then such division shall be made as her Executor "in his absolute discretion" shall determine…
>
> Notwithstanding any tentative allocations which may have been made over twenty years ago or any processes enabling Mother to start making gifts to us and to the children to remove items from her estate, the fact is that no such gifts or allocations were made by her and the discussions with respect to the same are not legally or morally binding on anybody now. The tangible personal property was hers to bequeath then, was hers at the time she made her Will in 1982 and was hers at the time of her death and her Will governs the division.
>
> The term "equally," as I read it, means monetarily equally.
>
> Harry has expressed to me a preference for at least two, if not more, Tiffany paintings (the Nuremberg and the Algiers). I think if we are going to agree upon preferences of this sort, we are going to have to make the preferences,

---

[2] While the letter (the "Letter") was not attached to the complaint, plaintiffs provided the Letter to Michaan, who attaches it to the instant motion to dismiss. *See* Doc. 22, Ex. B. The Court finds that the Letter is appropriate for consideration on the instant motion. While a court is ordinarily limited to consideration of allegations in the pleadings on a motion to dismiss, a court can properly consider any documents incorporated into the pleadings by reference. *Kamholtz v. Yates Cty.*, 350 F.App'x 589, 592 (2d Cir. 2009)(citing *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000)). Here, the Letter has been incorporated by reference into the complaint and could be properly considered here. Although factual allegations in the complaint are usually accepted as true on a motion to dismiss, the Court is not "obliged to accept" the Trust's allegations as to how to construe a document that the complaint incorporates by reference, but should "resolve any contractual ambiguities in favor of" the Trust. *See Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

subject to anti-alienation agreements to any person outside of an immediate family member both during life and at death, i.e. restrict them to life estates with the redivision being made to present members of the class surviving at the termination of the life estate.  Absent such agreements…I will in my absolute discretion, determine the division.

I think this is the only fair way for everybody, particularly those who may survive for the next 50 years or so, and I think we have to proceed on this basis.

Hoping you agree.

Doc. 22, Ex. B.[3]

Furthermore, the Platt brothers acknowledged these understandings and anti-alienation restriction when they took the paintings into their custody, and divided them amongst themselves.  *Id.* ¶ 12.  These understandings were conditions on which they received custody of the paintings.  *Id.*  The Platt brothers also acknowledged these understandings and anti-alienation restriction with respect to the Family paintings in conversations over the years with family members and third parties.  *Id.* ¶ 13.

The three Platt brothers are now deceased.  *Id.* ¶ 15.  On March 21, 2018, after the death of the three Platt brothers, members of the Platt Family created the Trust to provide for the continued enjoyment of the paintings by members of the Platt Family.  Id. ¶¶ 4, 17.  The estates of Thomas and Graham arranged for custody of the paintings in their possession to be divided among members of the Platt Family.  *Id.* ¶ 15. When Henry died in 2015, the Nuremberg Paintings were not accounted for.  *Id.*

In February 2019, after its establishment, the Trust learned that a New York gallery was exhibiting and offering for sale one of the Nuremberg Paintings— "Market Day at Nuremberg" at the Park Avenue Armory in New York City.  *Id.* ¶ 18.  Upon learning of this information, the

---

[3] The Letter was not signed by Thomas.

Trust contacted the gallery, which in turn referred the Trust to Michaan, who had possession of the paintings and had put them up for sale. *Id.* ¶ 19.  On April 22, 2019, the Trust received an email from Michaan's lawyer advising that Michaan purchased the Nuremberg Paintings. *Id.* ¶ 20.  Specifically, Michaan's lawyer claimed that Michaan purchased the Nuremberg Paintings for one million dollars from an agent purporting to represent Henry Platt on April 29, 2011. *Id.* ¶ 21.  Michaan's lawyer attached to the email a bill of sale sent from Henry 'c/o Krantz and Company, 145 East 57th Street, New York, NY 10022,' allegedly an accounting firm. *Id.* ¶ 22. The bill of sale described the Nuremberg Paintings and stated that 'Henry is a direct descendant of the artist and holds clear title to these works. These paintings have remained in the [Family] since their creation." *Id.*  According to the complaint, while the bill of sale was correct in noting that the paintings "have remained in the Platt Family since their creation," it was incorrect in noting that Henry held clear title to them. *Id.* ¶ 22.  The email further advised that Michaan was in the process of bringing the Nuremberg Paintings to the market. *Id.* ¶ 24.  Thereafter, the Trust made a demand that Michaan immediately return the Nuremberg Paintings, but the demand was rejected.

On May 9, 2019, plaintiffs filed the instant complaint, asserting two claims for replevin, one claim for conversion and a claim for declaratory judgment.  Doc. 1.  On August 30, 2019, Michaan moved to dismiss all claims.  Doc. 20.

## II.    MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

III.    **DISCUSSION**

The parties' dispute here centers on one single issue—nature of Henry's possession of the two paintings at the time of their sale.  Specifically, whether at the time of the sale, Henry Platt only had a life estate in the two paintings as Plaintiffs contend, or whether he had clear title, as Michaan contends.  *See generally* Pls.' Mem. of Law in Opp'n. ("Pls.' Mem."), Doc. 23. Michaan asserts that the allegations in the complaint do not rebut the representation in the bill of sale that Henry owned the paintings outright.  Michaan also argues that the letter on which Plaintiffs rely directly contradicts the Trust's allegation that the paintings belonged to the Platt Family.  *See generally* Def.' Mem. of Law in Supp. ("Michaan's Mem."), Doc. 21.  Michaan further contends that any oral agreement to impose anti-alienation restrictions on Henry's ownership violates the New York Statute of Frauds and the New York Estates, Powers & Trusts Law.  *Id.*  Alternatively, Michaan contends that the Complaint has failed to plead any agreement, much less a written agreement limiting Henry's ownership of the paintings at issue.  *Id.* Therefore, Michaan contends that Plaintiffs, without a claim for ownership of the paintings at issue, lack standing to bring this action.  *Id.*

Preliminarily, the parties agree that New York law governs this action.  They also do not dispute that in order to state a *prima facie* case for both replevin and conversion under New York law, plaintiffs are required to plead either ownership of, or a superior right to the two paintings. However, they dispute whether the complaint contains adequate allegations relating thereto to survive a motion to dismiss under Fed. R. Civ. R. 12(b)(6).

### A.  Provenance of the Nuremberg Paintings

The Trust's primary argument for a claim of ownership or a superior right to the Nuremberg Paintings is that the Platt Family, and subsequently the Trust, have always owned the Nuremberg paintings.  Therefore, the Trust contends, the purported sale of the Nuremberg Paintings by Henry to Michaan was wrongful because Henry never owned them.  In response, Michaan contends that the Trust's argument is simply contradicted by the Letter, and that both Louise and Henry had ownership of the Nuremberg Paintings.  The Court finds that the Trust's allegations do support a claim of ownership by the Platt Family, and that they are not contradicted by the Letter.

The Trust's allegations are more than sufficient to support a claim of ownership by the Platt Family.  Indeed, the Trust alleges that the Platt Family has always owned the Nuremberg Paintings and that Louise left them to be held by the family.  The Trust further alleges that there is an agreement and understanding among members of the Platt Family that ownership of the paintings stay in the family, and that Henry received custody of the Nuremberg Paintings subject to those understandings and agreements.  These factual allegations, accepted as true, support an inference that the Platt Family owned the Nuremberg Paintings at the time of the sale.

In addition, the Court disagrees with Michaan's contention that the Trust's allegations are directly contradicted by the Letter.  The cases cited by Michaan are based on documents that unambiguously and clearly contradict the allegations in the complaint.  *See e.g. Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397 (S.D.N.Y. 2002).  Here, nothing in the Letter plainly contradicts the Trust's allegation that the Platt Family has always owned the paintings.  Contrary to Michaan's assertion, construing any ambiguity in favor of the Trust, the Court finds that the Letter, at the very least, supports an inference that Henry obtained custody of the Nuremberg

7

Paintings subject to an understanding that they would stay within the family.  Specifically in the

Letter, Thomas noted that if the paintings in Louise's estate were to be distributed according to

the Platt brothers' preferences, such distribution would be made "subject to anti-alienation

agreements to any person outside of an immediate family member" and restricted to "life

estates."  *See* Doc. 22 Ex. B.  Moreover, the complaint alleges that the estates of two of the three

brothers, Thomas and Graham, arranged for the paintings in their possession to be divided

among members of the Platt Family, consistent with the Trust's interpretation of the Letter.  In

any event, Michaan's contention is based on his own alternative interpretation of the Letter that,

at best, creates issues of fact that cannot be resolved at the motion to dismiss stage.

### B.  New York Statute of Frauds and EPTL

Michaan also attempts to invoke the defense of the New York Statute of Frauds to the

Trust's asserted ownership or superior right to the Nuremberg Paintings, arguing that any alleged

agreement limiting Henry's possession to custody of those paintings fails to satisfy the New

York General Obligations Law § 5-701, § 5-703 and the New York Estates, Powers & Trusts

Law ("EPTL").

As one New York State Appellate Court recently explained, certain types of agreements

must be in writing and signed by the party to be charged therewith, pursuant to the New York

Statute of Frauds.  *See Massias v. Goldberg*, 163 A.D.3d 648, 649 (N.Y. 2d Dep't, 2018) (citing

to, *inter alia*, New York General Obligations Law §§ 5-701, 5-703 and EPTL 13-2.1).

Specifically, section 5-701 of the New York General Obligations Law ("Statute of Frauds")

provides, in relevant part, that "every agreement…is void, unless it…be in writing and

subscribed by the party to be charged therewith…if such agreement…[b]y its terms is not to be

performed within one year from the making thereof or the performance of which is not to be

completed before the end of the lifetime." N.Y. Gen. Oblig. Law § 5-701(a)(1).[4]  In addition, section 13-2.1 of the New York EPTL imposes a similar requirement for a signed writing for any contract to make a testamentary provision.[5]  Here, any agreement among the Platt brothers to limit Henry's possession of the Nuremberg paintings to lifetime custody, subject to anti-alienation restrictions, could not be completed within one year from its making or before the death of Henry.  Arguably therefore, any such agreement among the Platt Brothers would be subject to the New York Statute of Frauds.

However, Michaan, as a stranger to any agreement among the Platt brothers, cannot interpose the New York Statute of Frauds defense.  Michaan's citation to *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F.Supp. 2d 329 (S.D.N.Y. 2008) is inapposite.  Contrary to Michaan's assertion, the *Darby* Court reaffirmed the well settled law that the New York Statute of Frauds is a personal defense that cannot be availed of by a third party.  *See id* at 347 (collecting cases); *see also Raoul v. Olde Vill. Hall, Inc.*, 76 A.D. 2d 319 (N.Y. 2d Dep't 1980) ("an oral contract within the statute is not absolutely invalid but is only voidable and unenforceable at the election of the party to be charged").  However, in *Darby*, the "person to be charged" was a defendant in the action and interposed the statute of frauds defense.  *See generally id*.  Michaan, as a third party, cannot avail himself of the statute of frauds defense.  Accordingly, Michaan's motion to dismiss on the basis that the Trust has insufficiently alleged ownership or a superior right to the Nuremberg Paintings is denied.

---

[4] Michaan also contends that section 5-703 of the New York Statute of Frauds also applies.  However, the title of that section refers to "conveyances and contracts concerning real property," and its plain language refers to "[a]n estate or interest in real property."  N.Y. Gen. Oblig. Law § 5-703.  Therefore, section 5-703 does not apply in this case.

[5] The Trust and Michaan dispute whether any agreement limiting Henry's possession of the Nuremberg Paintings to lifetime custody constitutes a contract to make a testamentary provision.  The Court need not resolve this issue because the Court finds that any such agreement, at minimum, fits under New York Gen. Oblig. Law § 5-701 and thus triggers the New York Statute of Fraud.

### C. Henry's Alleged Mental Incapacity

The Trust also asserts a second replevin claim on the basis that Henry lacked the mental capacity to even enter into the sale of the Nuremberg Paintings in the instant action.  Michaan correctly points out that a person is presumed competent to enter into a binding agreement, thus the burden of proving a lack of mental competency is on the party asserting incapacity.  *See Feiden v. Feiden*, 151 A.D.2d 889, 890 (N.Y. 3rd Dep't 1989).  Various New York state courts have explained that the relevant test is "whether the person's mind was 'so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction.'"  *See id* (collecting cases).

Here, the Trust alleges that "[b]y 2011, Henry lacked the mental competence and/or capacity to sell or other transfer the [Nuremberg] Paintings."  In addition, as the Trust points out, Henry's purported later sale of the paintings is also inconsistent with his prior conduct, i.e., his conversations acknowledging the Platt family's ownership of the paintings and his understanding that none of the paintings would be transferred or sold outside of the family.  Under Restatement Second of Contracts § 15, "departure from the normal pattern of similar transactions" is a critical fact in cases involving assertion of incompetency, and "almost any conduct of the person may be relevant."  *See* RESTATEMENT (SECOND) OF CONTRACTS § 15 cmt. C (Proof of incompetency).  Therefore, the Court finds that, at the motion to dismiss stage, the Trust's claim of Henry's mental incapacity is sufficiently plausible to entitle the Trust to offer evidence supporting the claim.  Michaan's citations to various New York state courts' decisions are inapposite, as they all involve different stages of litigation.  *See id* (appeal after trial); *see also Smith v. Comas*, 173 A.D.2d 535 (N.Y. 2d Dep't 1991) (appeal from judgment); *In re Kotick*, No. 2005-1202, 2014 WL 11456092 (N.Y. Sur. Ct. 2014) (motion for summary judgment); *Blatt*

*v. Manhattan Med. Grp., P.C.*, 131 A.D.2d 48 (N.Y. 1st Dep't 1987) (appeal from order and judgment).  Accordingly, Michaan's motion to dismiss the Trust's second claim for replevin is denied.

### D.  Standing

Lastly, Michaan contends that this action should also be dismissed for lack of standing because the Trust has not shown any ownership interest in the Nuremberg Paintings to establish a legally protected interest that was invaded, so as to state an "injury in fact."  Again, this contention must fail for the simple reason that the Trust has alleged that the Platt Family has always owned the Nuremberg Paintings; that the Trust was formed by members of the Platt Family to hold those paintings, among others held by Louise during her lifetime; that the Trust has asserted its ownership rights; and that Michaan has denied those ownership rights.  Those allegations are sufficient to plead standing, because they allege "personal injury fairly traceable to the defendants' allegedly unlawful conduct."  *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).

## IV.   CONCLUSION

For the reasons set forth above, Michaan's motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 20.

SO ORDERED.

Dated:    May 8, 2020
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

11