UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMO PLATT and GORDON PLATT, *as co-trustees of the Platt Family Artwork Trust*,

        Plaintiffs,

            -against-

ALLEN MICHAAN,

        Defendant.
_____

ALLEN MICHAAN,

        Counterclaimant,

            -against-

TIMO PLATT and GORDON PLATT, *individually and as co-trustees of the Platt Family Artwork Trust,*

        Counterclaim Defendants.
_____

ALLEN MICHAAN,

        Defendant and Third-Party Plaintiff,

            -against-

*Estate of Henry B. Platt,* by THE NEW YORK COUNTY PUBLIC ADMINISTRATOR *as Administrator*, THORUNN WATHNE, TIMO PLATT, and GORDON PLATT, *as co-trustees of the Platt Family Artwork Trust*, and JOHN DOES 2-25*,*

        Third-Party Defendants.
_____

Case No. 1:19-cv-04234-ER

## AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT OF DEFENDANT/THIRD-PARTY PLAINTIFF ALLEN MICHAAN

Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, Defendant and Third-Party Plaintiff Allen Michaan, by and through his undersigned counsel, answers the complaint of plaintiffs Timo and Gordon Platt and counterclaims against plaintiffs as follows, and further brings this Third-Party Complaint against Third-Party Defendants The New York County Public Administrator as Administrator of the Estate of Henry B. Platt, Thorunn Wathne, and Timo Platt and Gordon Platt *as co-trustees of the Platt Family Artwork Trust*, John Does 2-5 as participants in the complained-of actions, and John Does 6-25 as distributees of the assets of the Estate of Henry Platt as follows.

## ANSWER

### NATURE OF THE ACTION

1.      Michaan states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 1 of the Complaint, except denies that Plaintiffs are entitled to "recover" the identified paintings (the "Two Paintings") and denies the remaining allegations.

2.      Michaan admits that Plaintiffs have requested "return" of the Two Paintings, that he is still in possession of the Two Paintings and that he has sought to sell the Two Paintings until Plaintiffs interfered in the sales.  Michaan denies the remaining allegations in paragraph 2 of the Complaint.

3.      The allegations in paragraph 3 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

**PARTIES**

4.      The allegations in the first sentence of paragraph 4 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.  In addition, Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 4 of the Complaint and therefore denies them.

5.      Michaan admits that he resides at 1601 Central Avenue, Alameda, California. The allegations in the second sentence of paragraph 5 of the Complaint apply to a dismissed party and constitute legal conclusions to which no response is required.

**JURISDICTION AND VENUE**

6.      The allegations in paragraph 6 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan lacks sufficient knowledge of Plaintiffs' citizenship and therefore denies.

7.      The allegations in paragraph 7 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies that he transacted business in this state sufficient to confer jurisdiction.

8.      The allegations in paragraph 8 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

**FACTS RELATING TO ALL THE CLAIMS FOR RELIEF**

9.      The first sentence of paragraph 9 of the Complaint constitutes legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.  Michaan further states that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 9 of the Complaint and therefore denies them.

10.     The allegations in paragraph 10 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan admits that Henry Platt inherited the Two Paintings from his mother and that his brother Thomas was executor of their mother's estate, but denies the remainder of the paragraph.

11.     Michaan denies the allegations in paragraph 11 of the Complaint.

12.     Michaan denies the allegations in paragraph 12 of the Complaint.

13.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint as well as their admissibility and therefore denies them.

14.     The allegations in paragraph 14 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

15.     Michaan denies the allegations in paragraph 15 of the Complaint.

16.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and therefore denies them.

17.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and therefore denies them.  In addition, to the extent the allegations in paragraph 17 constitute legal conclusions, no response is required.  To the extent a response is required, Michaan denies.

18.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and therefore denies them.

19.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies them.

20.     Michaan admits his lawyer sent an email to Timo Platt on April 22, 2019, only shortly after learning that the members of the Platt family were asserting rights in the Two Paintings based upon the purported misrepresentations by Henry Platt that underlie the instant Complaint.  Michaan denies the remaining allegations in paragraph 20 of the Complaint.

21.     Michaan states that the email referred to speaks for itself.  Except as expressly admitted, Michaan denies the remaining allegations in paragraph 21 of the Complaint.

22.     Michaan admits that the email referred to included a bill of sale as an attachment. Michaan further refers to that bill of sale for the contents thereof.  Michaan denies the remaining allegations in paragraph 22 of the Complaint.

23.     Michaan lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies them.

24.     Michaan refers to the referenced email for the contents thereof and admits that Plaintiffs interfered in any desired sales.  Except as expressly admitted, Michaan denies the remaining allegations in paragraph 24 of the Complaint.

25.     Michaan admits that Plaintiffs have requested "return" of the Two Paintings, and that he is still in possession of the Two Paintings.  Michaan denies the remaining allegations in paragraph 25 of the Complaint.

### FIRST CLAIM FOR RELIEF
### [Replevin]

26.     Michaan hereby incorporates its responses to each of the foregoing paragraphs of the Complaint.

27.     The allegations in paragraph 27 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

28.     The allegations in paragraph 28 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

29.     The allegations in paragraph 29 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

30.     The allegations in paragraph 30 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

31.     Michaan admits that Plaintiffs have requested the Two Paintings be returned, that he is still in possession of the Two Paintings.  Michaan denies the remaining allegations in paragraph 31 of the Complaint.

32.     The allegations in paragraph 32 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

## SECOND CLAIM FOR RELIEF
### [Replevin, In The Alternative]

33.     Michaan hereby incorporates its responses to each of the foregoing paragraphs of the Complaint.

34.     The allegations in paragraph 34 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

35.     The allegations in paragraph 35 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

36.     Michaan denies the allegations in paragraph 36 of the Complaint.

37.     The allegations in paragraph 37 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

38.     Michaan admits that Plaintiffs have requested the Two Paintings be returned, that he is still in possession of the Two Paintings.  Michaan denies the remaining allegations in paragraph 38 of the Complaint.

39.     The allegations in paragraph 39 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

**THIRD CLAIM FOR RELIEF**
**[Declaratory Judgment]**

40.     Michaan hereby incorporates its responses to each of the foregoing paragraphs of the Complaint.

41.     Paragraph 41 of the Complaint states Plaintiffs' request for declaratory relief and therefore no response is required.  To the extent a response is required, Michaan denies that Plaintiffs have any right to the requested declaration.

42.     Paragraph 42 of the Complaint states Plaintiffs' request for declaratory relief and therefore no response is required.  To the extent a response is required, Michaan denies that Plaintiffs have any right to the requested declaration.

43.     The allegations in paragraph 43 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

**FOURTH CLAIM FOR RELIEF**
**[Conversion]**

44.     Michaan hereby incorporates its responses to each of the foregoing paragraphs of the Complaint.

45.     The allegations in paragraph 45 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

46.     The allegations in paragraph 46 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

47.     Michaan admits that Plaintiffs have requested the Two Paintings be returned, that he is still in possession of the Two Paintings.  Michaan denies the remaining allegations in paragraph 47 of the Complaint.

48.     The allegations in paragraph 48 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

49.     The allegations in paragraph 49 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Michaan denies.

50.     Michaan denies the allegations in paragraph 50 of the Complaint.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

The remainder of the Complaint recites a prayer for relief to which no response is required.  To the extent any response is required, Michaan denies that Plaintiffs have any valid cause of action and that Plaintiffs are entitled to any relief.

## AFFIRMATIVE DEFENSES

### First Defense

The complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims are barred because they lack standing to assert them.

### Third Defense

Plaintiffs' claims are barred in whole or in part by the doctrines of estoppel, waiver, and/or acquiescence.

### Fourth Defense

Plaintiffs' claims are barred by the doctrine of laches.

### Fifth Defense

Plaintiffs' claims are barred by the applicable statutes of limitations.

### Sixth Defense

Any agreements relied upon by Plaintiffs to support their claims are unenforceable under the statute of frauds.

### Seventh Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

### Eighth Defense

Plaintiffs cannot show title in the Two Paintings vesting in anyone able to transfer title to Michaan other than Henry Platt.

### Additional Defenses

Michaan reserves the right to add additional defenses as they are learned through discovery and further investigation.

### Jury Demand

Michaan demands a jury trial on all issues so triable.

## **COUNTERCLAIMS**

Counterclaimant Allen Michaan, by and through his attorneys, counterclaims pursuant to Rule 13 of the Federal Rules of Civil Procedure, alleging as follows:

1.      This action and these Counterclaims both concern the sale of the Two Paintings, namely paintings created by Louis Comfort Tiffany ("LCT") entitled "Fields of Irvington" and "Marketplace at Nuremberg."  Counterclaim plaintiff Michaan purchased the Two Paintings for $1,000,000 from LCT's great-grandson, Henry B. Platt (often-called Harry Platt) in April 2011. As part of the purchase, Henry Platt's representative made express representations and warranties, including in a final bill of sale, that Henry Platt had clear title to the Two Paintings. Michaan paid the full amount of the negotiated price for the Two Paintings to Henry Platt. Henry Platt died in 2015.

2.      In 2019, two of Henry Platt's nephews (identified as the "Trustees") brought the Underlying Action as co-trustees of a "Platt Family Artwork Trust" (the "Trust"), a trust that they allege was created in 2018 and that they allege has title to the Two Paintings.  According to the Trustees, as alleged in the Underlying Action, Henry Platt entered into an agreement with his two brothers in 1994, and as a result he only possessed a life estate in the Two Paintings that prevented him from selling the Two Paintings to Michaan and transferring to Michaan good title.

3.      Despite Plaintiffs' allegations and supposed belief that upon Henry Platt's death title in the Two Paintings and any other LCT paintings in Henry Platt's possession should have passed to the Platt family by agreement of the Platt brothers, Plaintiffs took no actions with respect to probating Henry Platt's estate or otherwise obtain the Two Paintings until filing this action almost four years after Henry Platt's death.

4.     Despite Plaintiffs' allegations and supposed belief that upon Henry Platt's death title in the Two Paintings and any other LCT paintings in Henry Platt's possession that were inherited from his mother should have passed to the Platt family, neither Plaintiffs nor any member of the Platt family took any actions to secure any assets of Henry Platt's estate or otherwise cause his estate to be administered/probated.

5.     Plaintiffs' positions in this case are contradicted by the wills of the Trustees' own fathers, Henry Platt's brothers, which treated any LCT paintings as the brothers' property to bequeath to their spouses outright without any indication they were subject to a life estate or any anti-alienation restriction.

6.     On information and belief, Plaintiffs' positions in this case are contradicted by how Henry Platt, his brothers and the heirs of his brothers treated any inherited LCT paintings for tax purposes, namely that they did not treat them as being subject to a life estate or any anti-alienation restriction.

7.     Plaintiffs, therefore, were aware at the time they filed their Complaint that the Trust had no valid claim for the Two Paintings and that Michaan obtained valid transferrable title in the Two Paintings from Henry Platt.  Yet they filed this action regardless in an attempt to leverage their knowingly false claims in order to obtain the Two Paintings and/or compensation from Michaan.

8.     On information and belief, Plaintiffs were further aware that, at the time the Platt Family raised objections and registered the Two Paintings as missing, and then it filed the Complaint, Michaan was in the process of selling the Two Paintings.  Plaintiffs' action seeks to prevent any sale, and their allegations that Michaan does not possess valid title to the Two

Paintings has interfered with his prospective economic advantage by preventing him from being able to sell the Two Paintings.

9.      Alternatively, if Plaintiffs are successful in their action, then the Trust and its settlors and beneficiaries, as distributees of the Estate of Henry Platt, are liable for compensation and damages owed Michaan by the estate for the reasons set out in Michaan's Third Party Complaint as is anyone who took from the Estate of Henry Platt.

## THE PARTIES

10.      Counterclaimant Michaan is an adult individual who resides at 1601 Central Avenue, Alameda, California.

11.      On information and belief, the Trust was formed under New York Law as of March 21, 2018.  Co-Trustee Timo Platt resides in Arroyo Seco, New Mexico. Co-Trustee Gordon Platt resides in Mt. Pleasant, South Carolina.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367.

13.      This Court has personal jurisdiction over the Trust and Co-Trustees because they subjected themselves to the jurisdiction of this Court in this case by filing their Complaint.

14.      Venue in this case is proper in this judicial district by virtue of Plaintiffs filing their complaint in this court.

15.      An immediate, real and justiciable controversy exists between Michaan and the Trust as to whether Plaintiffs tortuously interfered with Michaan's prospective economic advantage, maliciously prosecuted the claims in their Complaint and, in the event the Trust's

claims are successful, whether as a beneficiary of the Estate of Henry Platt it owes compensation to Michaan based on the claims contained in Michaan's Third-Party Complaint.

## FACTUAL ALLEGATIONS

16.     Henry Platt was the great-great-grandson of Charles Lewis Tiffany, founder of the renowned jeweler and retailer Tiffany & Co. ("Tiffany's"), and was the great-grandson of LCT (Louis Comfort Tiffany), a world-renowned, successful artist whose designs helped make Tiffany's famous.  On information and belief, Henry Platt was at one time chairman and chief executive of Tiffany's.

17.     As alleged in the Underlying Action, works by LCT passed to his granddaughter, Louise Platt.  Upon her death in 1994, Louise Platt left personal property to her three sons – Henry, Thomas and Graham – and Henry received, *inter alia,* the Two Paintings at issue.

18.     Members of the Platt family, including the Co-Trustees, were aware that Henry Platt took possession of the Two Paintings at issue and other LCT works following Louise Platt's death.

19.     Plaintiffs allege that shortly after the death of Louise Platt, and as part of the division of assets from her estate, the three brothers agreed to hold LCT artwork they each inherited from Louise Platt in a life estate and/or subject to an agreement not to alienate the artwork outside of the family.  On information and belief, such an agreement would constitute a taxable event but none of the brothers ever declared that taxable event to the appropriate tax authorities nor did they file or pay any tax related to that transaction.

20.     Plaintiffs lack any evidence signed or endorsed by Henry Platt supporting the existence of any agreement that the paintings bequeathed by Louise Platt should be subject to life estates and/or an anti-alienation restriction.

21.     Following Henry Platt's death on July 22, 2015, neither the Co-Trustees nor any other Platt family members took any steps with respect to probating or administering Henry Platt's estate or disposing of any of his possessions.

22.     Despite claiming to believe Henry Platt possessed only a life estate in any LCT paintings he received from Louise Platt, including the Two Paintings at issue, and/or that such paintings were subject to an anti-alienation agreement, neither the Co-Trustees nor any other members of the Platt family took any steps to recover such paintings until just before filing this action on May 9, 2019, nearly four years after Henry Platt's death.

23.     Henry Platt's brother Graham Platt died on January 25, 2016 and was survived by his children, including Gordon Platt (a Co-Trustee).  Graham's signed will expressly bequeaths his property – i.e. any LCT paintings in his possession – first to his wife and, if she did not survive him, then to his children in equal parts.

24.     Graham Platt's will treats any such paintings as his own property, to be transferred to his wife or children outright without any restrictions created by a life estate and/or anti-alienation agreement.

25.     The last survivor of the three brothers, Thomas Platt, died on March 4, 2017 and was survived by his wife Byrd Symington Platt and children, including plaintiff Timo Platt. Thomas's signed will expressly bequeathed all his paintings to his wife or, if she did not survive him, to his children "to be divided among them as they shall agree upon in as nearly equal shares as may be practical."

26.     Thomas Platt's will treats the paintings as his own property, to be transferred to his wife or children outright without any restrictions created by a life estate and/or anti-alienation agreement.

27.     Despite taking no action for nearly four years following Henry Platt's death and being aware from their own fathers' wills that the LCT paintings Louise Platt bequeathed to her sons were not subject to any recognizable life estate or anti-alienation agreement, the Trust – by the Co-Trustees – brought this action against Michaan seeking to require Michaan to return the Two Paintings and seeking to avoid compensating him for the Two Paintings.

28.     The Trust and its Trustees are and have been aware that Michaan has attempted to sell the Two Paintings.  Plaintiffs' action prevents and in effect seeks to prevent any such sale and further interferes with Michaan's ability to sell the paintings by falsely claiming Henry Platt did not possess transferable title to the Two Paintings.

29.     The Complaint alleges that, by 2011, Henry Platt lacked "the mental competence and/or capacity to sell or other [sic] transfer the Two Paintings."  It further alleges that either Henry Platt or his "companion" misappropriated and wrongfully sold the Two Paintings, and that one or more Co-Trustees informed this companion of the life estate and/or anti-alienation restrictions on the Two Paintings "back in or around the 2006-2007 period."

30.     The Complaint alleges that the Two Paintings and other of Henry's Platt's assets were in the companion's possession following Henry Platt's death.  On information and belief, at no time did the Trustees or any other family member attempt to obtain the Two Paintings, any other LCT painting, or any other estate assets from the "companion".

31.     The "companion" Plaintiffs refer to is Thorunn Wathne.

32.     Despite allegedly believing that Wathne was involved in the wrongful sale of the Two Paintings because Henry Platt himself lacked competence to sell and/or she was aware of the alleged restrictions on sale, the Trust has not brought any action against Wathne.

33.     If, as the Trust alleges, title in the Two Paintings passed from Henry Platt to the Platt family upon his death, then the settlors of the Trust would be distributees of Henry Platt's Estate.  As distributee of Henry Platt's estate, the Trust is liable for any compensation the Estate owes Michaan.

**FIRST CLAIM FOR RELIEF**
**<u>Tortious Interference With Prospective Economic Advantage</u>**

34.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 33 as if fully set forth herein.

35.     Prior to Plaintiffs filing this action, Michaan was attempting to sell one or both of the Two Paintings.

36.     Prior to filing this Action, the Trust and Co-Trustees registered the Two Paintings as lost or missing and thereby made the Two Paintings essentially unsaleable.

37.     Prior to filing this Action, the Trust and Co-Trustees approached individuals involved in the art world to assert that the Two Paintings were lost or missing and thereby made the Two Paintings essentially unsaleable.

38.     By filing this Action, the Trust and its Co-Trustees have intentionally interfered with Michaan's ability to negotiate for the sale of the Two Paintings by alleging that Michaan does not possess valid transferable title in the Two Paintings.

39.     Plaintiffs, as evidenced by their own fathers' wills and their failure to take any steps to possess the Two Paintings or any of Henry Platt's other assets for nearly four years after his death, were aware the Two Paintings, like the LCT paintings bequeathed outright by their fathers, were not subject to any life estate or anti-alienation restrictions.

40.     Plaintiffs therefore brought these meritless claims solely in an attempt to obtain the Two Paintings and/or compensation from Michaan without any legal justification. Plaintiffs'

filing of meritless claims against Mr. Michaan was done with the wrongful purpose and intent of interfering with Michaan's right and ability to sell or transfer the Two Paintings.

41.     Since this Action was filed nearly two years ago, as a direct and proximate result of Plaintiffs' actions, Michaan has been unable to sell the Two Paintings.

## SECOND CLAIM FOR RELIEF
### Liability For The Estate and Distributees of Henry Platt's Estate
(NY EPTL 12-1.1)

42.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 41 as if fully set forth herein, except that he pleads this Second Claim for Relief in the alternative to the allegations in First Claim for Relief.

43.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry Platt did not have clear transferable title to the Two Paintings then the Estate of Henry Platt is liable to Michaan

44.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry did not have clear transferable title to the Two Paintings and title to the Two Paintings was transferred to the Trust, then the Trust was funded with assets from Henry Platt's estate that are subject to claims by Michaan, and so the Trust as a distributee of Henry Platt's estate also is liable to Michaan.

45.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry Platt did not have clear transferable title to the Two Paintings, then Michaan has not been compensated by Henry Platt or the Estate for any damages or losses resulting from the failure of Henry Platt to deliver clear marketable title to the Two Paintings as part of the sale.

46.     For the reasons stated in Michaan's Third Party Complaint, in the event Henry Platt did not have clear transferable title to the Two Paintings, the estate of Henry Platt would be liable to Michaan for relief including but not limited to compensatory damages not less than $1,000,000, plus interest, punitive damages, and costs, expenses, disbursements, and reasonable attorneys' fees based on Henry Platt and Michaan's mutual mistake, Michaan's unilateral mistake, Henry Platt and his representatives' breach of express warranties and/or Henry Platt and his representatives' fraudulent misrepresentations.

47.     The Trust as a distributee would be liable for damages and costs owed Michaan by the estate of Henry Platt as a distributee, because it received property directly from the Estate of Henry Platt via contributions of paintings to the Trust by Thomas and/or Graham and their respective descendants.

**THIRD CLAIM FOR RELIEF**
**Quantum Meruit**

48.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 47 as if fully set forth herein.

49.     If Plaintiffs' allegations are correct and Michaan is not otherwise compensated for the Two Paintings and his limited to compensatory damages (not less than the purchase price of $1,000,000), plus interest, punitive damages, and costs, expenses, disbursements, and reasonable attorneys' fees, then the Trust is liable to Michaan in *quantum meruit* based upon the undisputed facts that:

   a.  Michaan had an express contract from Henry Platt to buy the Two Paintings that should have given him clear title such that he could keep or resell the Two Paintings at his election;

b.  Michaan had an express contract from Henry Platt to buy the Two Paintings that represented and warranted that Henry Platt had clear marketable title to the Two Paintings that he was delivering to Michaan;

c.  Michaan did not get clear title to the Two Paintings;

d.  The Trust is being enriched because of this at Michaan's expense; and

e.  Equity and good conscience require they make restitution to Michaan.

## PRAYER FOR RELIEF

WHEREFORE, defendant and counterclaimant Allen Michaan respectfully request that the Court enter a judgment awarding him:

A.  Compensatory damages in an amount to be determined at trial, but not less than the current value of the Two Paintings (well in excess of the purchase price of $1,000,000), plus interest;

B.  Punitive damages in an amount to be determined at trial on Michaan's First Counterclaim of Tortious Interference with Prospective Economic Advantage based on Plaintiffs' malicious actions.

C.  Costs, expenses, disbursements, and reasonable attorneys' fees in an amount to be awarded at trial; and

D.  Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Counterclaim plaintiff Allen Michaan hereby requests a trial by jury on all claims so triable.

## THIRD-PARTY COMPLAINT

### INTRODUCTION

1.     This Third-Party Complaint is filed by Defendant Allen Michaan ("Michaan")
and relates to the underlying, co-captioned dispute pending in this Court styled TIMO PLATT
AND GORDON PLATT, CO-TRUSTEES OF THE PLATT FAMILY ARTWORK TRUST v.
ALLEN MICHAAN, Case No. 1:19-cv-04234-ER (the "Underlying Action").  Causes of action
asserted in this Third-Party Complaint relate to and are contingent upon the outcome of the
Underlying Action and are pled premised on the Plaintiffs in the Underlying Action establishing
that Henry Platt could not deliver to Michaan clear marketable title to the Two Paintings, as
discussed below.  The allegations contained in Michaan's Answer and Counterclaims are
expressly incorporated herein.

2.     This action and the Underlying Action both concern the sale of the Two Paintings,
namely paintings created by Louis Comfort Tiffany ("LCT") entitled "Fields of Irvington" and
"Marketplace at Nuremberg."  Third-party plaintiff Michaan purchased the Two Paintings for
$1,000,000 from LCT's great-grandson, Henry B. Platt (often-called Harry Platt) in April 2011.
As part of the purchase, Henry Platt's representative made express representations and
warranties, including in a final bill of sale, that Henry Platt had clear title to the Two Paintings.
Michaan paid the full amount of the negotiated price for the Two Paintings to Henry Platt.
Henry Platt died in 2015.

3.     In 2019, two of Henry Platt's nephews (identified as the "Trustees") brought the
Underlying Action as co-trustees of a "Platt Family Artwork Trust," a trust that they allege was
created in 2018 and that they allege has title to the Two Paintings.  According to the Trustees, as
alleged in the Underlying Action, Henry Platt entered into an agreement with his two brothers in

1994, and as a result he only possessed a life estate in the Two Paintings that prevented him from selling the Two Paintings to Michaan and transferring to Michaan good title.

4.      The Underlying Action, if successful for the Trust, would strip Michaan of the Two Paintings and not compensate him for that loss.  In other words, if Plaintiffs are successful in the Underlying Action then Michaan would have neither the Two Paintings nor the monies he in good faith paid for those Two Paintings.  Accordingly, Michaan brings this Third Party Complaint to seek redress for the fraud alleged premised upon the Underlying Action, if, as the Trustees assert, Henry Platt did not have transferable title to the Two Paintings.

5.      The allegations put forth in the Underlying Action, that Henry Platt could not sell or transfer title to the Two Paintings to Michaan, are directly contrary to the representations made to Michaan by the seller and his representatives as part of the 2011 sale of the Two Paintings.  Accordingly, either Henry Platt was not constrained from selling the Two Paintings to Michaan in 2011 (as Henry Platt represented both directly and through his representatives at time of sale) or he had entered into an agreement with his relatives that prevented the sale (as alleged by the Trust in the Underlying Action).

6.      If there was a legally enforceable constraint on Henry Platt's ability to sell the Two Paintings to Michaan, then Henry Platt and/or his representatives (as well as others involved in directing the sale, including Thorunn Wathne) were either mistaken as to Platt's title to the Two Paintings and his right to transfer or actively misrepresented his title and right to transfer in order to induce Michaan to complete the purchase; in either event, they are liable to Third-party Plaintiff Michaan as set out herein.

7.      Accordingly, if the Trust is successful in the Underlying Action and the Two Paintings must be surrendered by Michaan, then this is an action against:

a.  The New York County Public Administrator as Administrator of the Estate of Henry Platt
(i) to rescind the 2011 sale of the Two Paintings based on either mutual or unilateral
mistake, and (ii) for monetary damages arising from the breach of express warranty,
fraudulent concealment and fraudulent misrepresentations of Henry Platt and his
representatives;

b.  Thorunn Wathne as representative of Henry Platt involved in directing sale of the Two
Paintings to Michaan, and for her role in the sale;

c.  John Does 2-5 as participants in the complained-of actions, and

d.  The Trust and John Does 6-25 as third-party defendants who received or otherwise are in
possession of assets from the Estate of Henry Platt, including the distributees of assets
from the Estates of Graham Platt and from Thomas Platt, for compensatory and punitive
damages arising from the sale of the Two Paintings.

## PARTIES

8.      Michaan is an adult individual who resides at 1601 Central Avenue, Alameda,
California.

9.      Defendant Thorunn Wathne is an adult individual who on information and belief
currently resides at 825 Fifth Avenue, Apt. 10e, New York County, New York City, New York.

10.     Defendant The New York County Public Administrator is the Administrator of
the Estate of Henry B. Platt per the October 4, 2021 Decree of the New York County Surrogate's
Court in Administration Proceeding No. 2021-939.

11.     On information and belief, the Trust was formed under New York Law as of
March 21, 2018.  Co-Trustee Timo Platt resides in Arroyo Seco, New Mexico.  Co-Trustee
Gordon Platt resides in Mt. Pleasant, South Carolina.

12.     Defendants John Does 2-25 are parties as yet unknown that participated in the complained-of actions, and/or received or otherwise are in possession of money or other assets of value from Henry B. Platt's estate, as well as from the estates of Graham and Thomas Platt, and are therefore liable for compensation owed Michaan by the estate.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because the third-party claims are related to the claims in the Underlying Action asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1331 such that they form part of the same case or controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over the Estate of Henry B. Platt, located in the State of New York, and therefore the as-yet unnamed Administrator representing that estate.

15.     This Court also has personal jurisdiction over The New York County Public Administrator as Administrator of the Estate of Henry B. Platt because this action arises out of the transaction of business in the State of New York by Platt (then a New York resident) and Michaan (then and now a California resident) for an amount now in controversy that exceeds $75,000.

16.     This court has personal jurisdiction over Thorunn Wathne because she is a resident of New York.

17.     This Court has personal jurisdiction over Timo Platt and Gordon Platt, *as co-trustees of the Platt Family Artwork Trust*, because, on information and belief, the Trust was formed under New York Law as of March 21, 2018.

## FACTUAL ALLEGATIONS

18.     Henry Platt was the great-great-grandson of Charles Lewis Tiffany, founder of the renowned jeweler and retailer Tiffany & Co. ("Tiffany's"), and great-grandson of LCT (Louis Comfort Tiffany), a world-renowned, successful artist whose designs helped make Tiffany's famous.  On information and belief, Henry Platt was at one time chairman and chief executive of Tiffany's.

19.     As alleged in the Underlying Action, works by LCT passed to his granddaughter, Louise Platt.  Upon her death in 1994, Louise Platt bequeathed personal property to her three sons – Henry, Thomas and Graham.  Henry received, *inter alia,* the Two Paintings at issue.

20.     The Trust alleges that prior to the division of assets from the estate of Louise Platt, the three brothers agreed to hold LCT artwork they each inherited from Louise Platt in a life estate and/or subject to an agreement not to alienate the artwork outside of the family.  On information and belief, an agreement such as one described in this paragraph would constitute a taxable event but none of the brothers ever declared that taxable event to the appropriate tax authorities nor did they file or pay any tax based upon such an agreement.

21.     The Trust further alleges in its Complaint (as set out in Paragraph 16 of the Complaint) that Henry Platt's "companion" – *i.e.,* defendant Wathne – "had been advised of the anti-alienation restrictions on the Two Paintings back in or around the 2006-2007 period."

22.     Prior to 2011, Henry Platt – on information and belief, together with his companion Thorunn Wathne – attempted to sell the Two Paintings at issue in this action for more than $2 million, and perhaps as high as $3 million, but did not find any buyers to consummate the sale at that price.

23.    In 2011, Michaan and his representative communicated with Henry Platt, his accountant Dianne Kranz and Wathne regarding buying the Two Paintings.  Eventually, Michaan agreed to purchase the Two Paintings for $1,000,000, pending their authentication by Alastair Duncan, an art dealer familiar with Tiffany works.  Kranz agreed Henry Platt would provide a bill of sale certifying the provenance of and clear title to the Two Paintings.

24.    On or about April 26, 2011, the Two Paintings were delivered to Duncan.  On April 29, 2011, Michaan received a Bill of Sale in connection with the sale.  The bill of sale stated, "Henry Platt is the direct descendant of the artist and holds clear title to these works," and "These paintings have remained in the Tiffany family since their creation."  In reasonable reliance upon those representations, Michaan wired $1,000,000 to Henry Platt's bank account. The Two Paintings then were delivered to Michaan in California.

25.    The Trust alleges in its Complaint (paragraph 36), however, that "by 2011, Henry lacked the mental competence and/or capacity to sell or other [sic] transfer the Two Paintings" and that the sales were made by "Henry's representatives."  On information and belief, one of the "representatives" that the Trust points to in its Complaint is Wathne, and so if the Trust is correct that Henry Platt lacked the mental competence and/or capacity to sell or otherwise transfer the Two Paintings, then Wathne is responsible for the sale and for the representations made to Michaan.

26.    Henry Platt died on July 22, 2015 at the age of 91, childless.

27.    On information and belief, Henry Platt did not leave a will nor was his estate subject to any probate or administration proceedings (until Michaan's recent Surrogates Court action).

28.     Upon information and belief, Wathne lives in the Fifth Avenue co-op apartment formerly owned by and occupied by Henry Platt and has possession, control and custody over other assets of Henry Platt's estate.  The members of Henry Platt's family at no time attempted to recover the apartment or any other assets of Henry Platt's estate.

29.     On information and belief, Henry Platt died intestate leaving two distributees: his brothers Graham and Thomas.  Graham died in 2016 and Thomas died in 2017.

30.     On information and belief, Henry Platt's nephew and perhaps others in the family began inquiring around the art community regarding the Two Paintings only when they became aware in 2019 that Michaan was attempting to sell the Two Paintings.

31.     On information and belief, in March 2018, various members of the Platt family, including Henry Platt's nephews Timo and Gordon Platt, formed the Platt Family Artwork Trust, purportedly to hold LCT artwork possessed by Henry Platt's mother, Louise Platt, during her lifetime.

32.     On information and belief, from the time of Henry Platt's death until the filing of the Underlying Action no member of the Platt family asked Wathne about the location or disposition of the Two Paintings.

33.     If the Trustees' allegations that Henry Platt did not hold clear title to the Two Paintings or have the authority to transfer title to Michaan are true, then this would be contrary to the representations made by Henry Platt, and by Wathne and Kranz.  It also would be contrary to statements made in the bill of sale indicating that Henry Platt had clear title and could properly sell the Two Paintings to Michaan.

34.     If the Trustees' allegations are true, Wathne and perhaps others were aware of the life estate and/or anti-alienation restriction preventing Henry Platt from selling the Two Paintings

and still participated in the sale to Michaan allowing Kranz to complete the sale in order to enrich Platt and, eventually, herself.

35.     The Trustees have also alleged in their Complaint that Henry Platt was not competent at the time he sold the Two Paintings to Michaan.  They also have alleged that Wathne participated in selling the Two Paintings to Michaan in order to enrich Platt and, either directly or indirectly, herself.

36. If the Trustees' allegations are correct, then Wathne:

   a.   intended to facilitate Henry Platt's sale of the Two Paintings to Michaan;

   b.   knew Henry Platt did not have transferable title to the Two Paintings and/or lacked the capacity to transfer the Two Paintings to Michaan;

   c.   assisted or participated in the sale of the Two Paintings to Michaan knowing that they could not be properly sold to Michaan and that the sale to Michaan constituted a fraud; and

   d.   knew that Michaan was being defrauded.

As such, if the Trustees are correct, Wathne purposefully, knowingly and intentionally participated in the improper sale to Michaan.

**FIRST CLAIM FOR RELIEF**
**Fraudulent Misrepresentation against the Estate, Wathne and John Does 2-5**

37.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 36 as if fully set forth herein.

38.     To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, he directly and through Kranz and/or Wathne fraudulently induced Michaan to purchase the Two Paintings, by:

    a.   Representing that he had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

    b.   Causing Kranz, by statements and/or omissions, to tell Michaan that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

    c.   Causing Kranz, by statements and/or omissions, to promise and subsequently deliver a bill of sale stating: "Henry Platt is the direct descendant of the artist and holds clear title to these works."

    d.   Made the foregoing representations either intentionally or with willful blindness or reckless disregard for the truth.

    e.   Failing to disclose and/or concealing that he held the Two Paintings subject to a life estate and/or agreement against alienation the prevented the Two Paintings from being sold with clear title.

39.    To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, as alleged by the Trustees, Wathne and/or John Does 2-5 were aware of such restrictions and fraudulently induced Michaan to purchase the Two Paintings by:

    a.   Representing that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

    b.   Causing Kranz, by statements and/or omissions, to tell Michaan that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

c.  Causing Kranz, by statements and/or omissions, to promise and subsequently deliver a bill of sale stating: "Henry Platt is the direct descendant of the artist and holds clear title to these works."

d.  Failing to disclose and/or concealing that Henry Platt held the Two Paintings subject to a life estate and/or agreement against alienation the prevented the Two Paintings from being sold with clear title.

40.   To the extent Henry Platt was incapable of completing the transaction for the sale of the Two Paintings because he was not competent, as alleged by the Co-Trustees, Wathne, John Does 2-5, and Henry Platt's representatives were aware of such incompetence and fraudulently induced Michaan to purchase the Two Paintings by failing to disclose and/or concealing such incompetence and representing that Henry Platt was competent to sell the Two Paintings.

41.   Michaan reasonably relied on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings and/or was competent to sell in purchasing the Two Paintings.

42.   Michaan's reliance on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings was reasonable because, among other things, Platt was a descendant of the artist LCT, had been a senior executive of Tiffany's, had possession of the Two Paintings for a number of years, often sold artwork, and there was no available information contradicting such representations.

43.   In reasonable reliance on the potentially fraudulent representations that Henry Platt held clear title to the Two Paintings and fraudulent concealment of the facts that (i) an agreement had been made precluding transfer of the Two Paintings and (ii) that Henry Platt was

not legally competent, Michaan was damaged in the amount of at least $1,000,000, plus interest in an amount to be proven at trial.

44.     The acts of fraudulent misrepresentation and concealment alleged herein proximately caused monetary and other damage to Michaan.

45.     Because Henry Platt and/or Wathne and/or John Does 2-5 engaged in the fraudulent conduct stated in this Complaint willfully and maliciously, and with the intent to damage Michaan, Michaan is entitled to an award of punitive damages in an amount to be established at trial.

**SECOND CLAIM FOR RELIEF**
**Aiding & Abetting against Wathne and John Does 2-5**

46.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 45 as if fully set forth herein.

47.     To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, he directly and through Kranz and/or Wathne fraudulently induced Michaan to purchase the Two Paintings, by:

   a.   Representing that he had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

   b.   Causing Kranz, by statements and/or omissions, to tell Michaan that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

   c.   Causing Kranz, by statements and/or omissions, to promise and subsequently deliver a bill of sale stating: "Henry Platt is the direct descendant of the artist and holds clear title to these works."

    d.   Made the foregoing representations either intentionally or with willful blindness or reckless disregard for the truth.

    e.   Failing to disclose and/or concealing that he held the Two Paintings subject to a life estate and/or agreement against alienation the prevented the Two Paintings from being sold with clear title.

48.     To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, Wathne and/or John Does 2-5 were aware of such restrictions and provided substantial assistance in fraudulently inducing Michaan to purchase the Two Paintings by:

    a.   Representing that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

    b.   Causing Kranz, by statements and/or omissions, to tell Michaan that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

    c.   Causing Kranz, by statements and/or omissions, to promise and subsequently deliver a bill of sale stating: "Henry Platt is the direct descendant of the artist and holds clear title to these works."

    d.   Failing to disclose and/or concealing that Henry Platt held the Two Paintings subject to a life estate and/or agreement against alienation the prevented the Two Paintings from being sold with clear title.

49.      Michaan reasonably relied on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings and/or was competent to sell in purchasing the Two Paintings.

50.      Michaan's reliance on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings was reasonable because, among other things, Platt was a descendant of the artist LCT, had been a senior executive of Tiffany's, had possession of the Two Paintings for a number of years, often sold artwork, and there was no available information contradicting such representations.

51.      In reasonable reliance on the potentially fraudulent representations that Henry Platt held clear title to the Two Paintings, Michaan was damaged in the amount of at least $1,000,000, plus interest in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Conspiracy to Commit Fraud against the Estate, Wathne and John Does 2-5**

52.      Michaan repeats and re-alleges the allegations in Paragraphs 1 through 51 as if fully set forth herein.

53.      To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, he, Wathne and/or John Does 2-5 were aware of such restrictions and that he did not have clear transferable title.

54.      To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, he, Wathne and/or John Does 2-5 entered into an agreement with the objective of fraudulently inducing Michaan to purchase the Two Paintings.

55.     To the extent Henry Platt did not have clear transferable title to the Two Paintings because he only had a life estate in the Two Paintings and/or the Two Paintings are subject to anti-alienation restrictions, he, Wathne and/or John Does 2-5,  acted to fraudulently induce Michaan to purchase the Two Paintings, by:

     a.  Representing that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

     b.  Causing Kranz, by statements and/or omissions, to tell Michaan that Henry Platt had clear title to the Two Paintings with the intent of using that false claim to market the Two Paintings.

     c.  Causing Kranz, by statements and/or omissions, to promise and subsequently deliver a bill of sale stating: "Henry Platt is the direct descendant of the artist and holds clear title to these works."

     d.  Made the foregoing representations either intentionally or with willful blindness or reckless disregard for the truth.

     e.  Failing to disclose and/or concealing that Henry Platt held the Two Paintings subject to a life estate and/or agreement against alienation the prevented the Two Paintings from being sold with clear title.

56.     Michaan reasonably relied on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings and/or was competent to sell in purchasing the Two Paintings.

57.     Michaan's reliance on potentially fraudulent representations that Henry Platt had clear title to the Two Paintings was reasonable because, among other things, Platt was a descendant of the artist LCT, had been a senior executive of Tiffany's, had possession of the

Two Paintings for a number of years, often sold artwork, and there was no available information contradicting such representations.

58.     In reasonable reliance on the potentially fraudulent representations that Henry Platt held clear title to the Two Paintings, Michaan was damaged in the amount of at least $1,000,000, plus interest in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**<u>Rescission Based on Mutual Mistake against the Estate and John Does 6-25</u>**

59.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 58 as if fully set forth herein, except that he pleads this Fourth Claim for Relief in the alternative to the allegations in the First, Second and Third Claims for Relief.

60.     Henry Platt, Wathne and Platt's other representatives maintained, represented and warranted in the Two Painting's bill of sale and in communications to Michaan that he had clear title to the Two Paintings and was capable of completing the transaction.

61.     Michaan purchased the Two Paintings in reliance upon the representations of Harry Platt, Wathne and Kranz that Henry Platt had clear transferable title to them and was capable of completing the transaction.

62.     To the extent Henry Platt did not have clear transferable title due to having only a life estate in the Two Paintings and/or the Two Paintings being subject to an anti-alienation restriction, and to the extent Henry Platt, Wathne, and/or Platt's other representatives were unaware of such restrictions, Michaan, Henry Platt and Wathne were mutually mistaken in believing Platt had clear title to the Two Paintings transferable to Michaan and would not have agreed to Michaan's purchase of the paintings had they not been so mistaken.

63.     To the extent Henry Platt could not sell the Two Paintings to Michaan and he, Wathne, and/or his representatives thought he was able to do so, Michaan, Henry Platt and

Wathne were mutually mistaken in believing Platt had clear title to the Two Paintings

transferable to Michaan and would not have agreed to Michaan's purchase of the paintings had

they not been so mistaken.

64.     Michaan agreed to and did purchase the Two Paintings for $1,000,000 without

any knowledge of any restrictions on Henry Platt's title to the Two Paintings or any reason

Henry Platt could not complete the transaction.

65.     Michaan fully performed his obligations under the purchase agreement.

66.     Michaan has no adequate remedy at law and is therefore entitled to rescind the

purchase.

**FIFTH CLAIM FOR RELIEF**
**Rescission Based on Unilateral Mistake against the Estate and John Does 6-25**

67.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 66 as if

fully set forth herein, except that he pleads this Fifth Claim for Relief in the alternative to the

allegations in the First, Second, Third and Fourth Claims for Relief.

68.     At the time he purchased the Two Paintings, Michaan believed Henry Platt had

clear transferable title to the Two Paintings and was capable of completing the transaction.

69.     To the extent Michaan's belief in Henry Platt's title was mistaken due to Henry

Platt having only a life estate in the Two Paintings and/or the Two Paintings being subject to an

anti-alienation restriction, Michaan had no knowledge his belief was mistaken and could not

have ascertained the truth concerning his mistaken belief at the time of sale because such

information was exclusively in the possession of Henry Platt, Wathne, and Platt's other

representatives.

70.     To the extent Michaan's believed Henry Platt was capable of completing the

transaction and he was mistaken due to Henry Platt not being competent to do so, Michaan had

no knowledge his belief was mistaken and could not have ascertained the truth concerning his mistaken belief at the time of sale because such information was exclusively in the possession of Henry Platt, Wathne, and Platt's other representatives.

71.     Henry Platt, Wathne, Kranz and Platt's other representatives were either mutually mistaken with Michaan in selling the Two Paintings as alleged in Count I or they were aware Henry Platt did not have clear transferable title to the Two Paintings that he was capable of transferring.

72.     Michaan exercised reasonable diligence in investigating the Two Paintings before purchase, e.g. relying on the representations of Wathne, and by obtaining written guarantee of Henry Platt's title.

73.     Michaan fully performed all his obligations under the purchase agreement.

74.     Michaan has no adequate remedy at law and is therefore entitled to rescind the purchase.

## SIXTH CLAIM FOR RELIEF
### Breach of Express Warranties against the Estate, Wathne and John Does 2-5

75.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 74 as if fully set forth herein, except that he pleads this Sixth Claim for Relief in the alternative to the allegations in the Fourth and Fifth Claims for Relief.

76.     Before and at the time of sale, for the purposes of inducing Michaan to consummate the transaction, Henry Platt, Wathne and John does 2-5 represented to Michaan that Henry Platt had clear transferable title to the Two Paintings, including causing Kranz's representation that, once Michaan had paid, she would send a bill of sale evidencing Henry Platt's clear title to the Two Paintings.

77.     The bill of sale for the Two Paintings expressly stated "Henry Platt is the direct descendant of the artist and holds clear title to these works."

78.     In agreeing to consummate the transaction, Michaan relied on express warranties of Henry Platt, Wathne and John Does 2-5 concerning Henry Platt's title to the Two Paintings and would not have purchased the Two Paintings had he been aware Henry Platt did not possess clear transferable title to the Two Paintings.

79.     Michaan fully performed his obligations under the purchase agreement.

80.     To the extent Henry Platt did not have clear transferable title to the Two Paintings due to instead having only a life estate in the Two Paintings and/or the Two Paintings being subject to an anti-alienation restriction, Henry Platt, Wathne and John Does 2-5 breached their express warranties that he did have clear title.

81.     Michaan suffered damages of the value of the Two Paintings, at least the purchase price $1,000,000, plus interest, as a result of this breach.

**SEVENTH CLAIM FOR RELIEF**
**Liability For The Estate, Wathne, the Trust and John Does 6-25**
(NY EPTL 12-1.1)

82.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 81 as if fully set forth herein, except that he pleads this Seventh Claim for Relief in the alternative to the allegations in the Fourth and Fifth Claims for Relief.

83.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry did not have clear transferable title to the Two Paintings then the Estate of Henry Platt is liable to Michaan and therefore Wathne and John Does 6-25 are liable.

84.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry did not have clear transferable title to the Two Paintings, then the distributees of Henry Platt's estate, also are liable to Michaan.

85.     If Plaintiffs' allegations are correct and the Court determines that there was an enforceable agreement among the Platt brothers such that Henry did not have clear transferable title to the Two Paintings then Michaan has not been compensated by Henry Platt or the Estate for any damages or losses resulting from the failure of Henry Platt to deliver clear marketable title to the Two Paintings as part of the sale.  In such a case, Wathne, the Trust and John Does 6 - 25 are liable to Michaan to the extent not compensated by virtue of the Counterclaims set out above for relief including but not limited to compensatory damages (not less than the purchase price of $1,000,000), plus interest, punitive damages, and costs, expenses, disbursements, and reasonable attorneys' fees based on Henry Platt and Michaan's mutual mistake, Michaan's unilateral mistake, Henry Platt and his representatives' breach of express warranties and/or Henry Platt and his representatives' fraudulent misrepresentations.

## EIGHTH CLAIM FOR RELIEF
### Quantum Meruit against the Estate, Wathne, the Trust and John Does 6-25

86.     Michaan repeats and re-alleges the allegations in Paragraphs 1 through 85 as if fully set forth herein, except that he pleads this Eighth Claim for Relief in the alternative to the allegations in the Fourth and Fifth Claims for Relief.

87.     If Plaintiffs' allegations are correct and Michaan is not otherwise compensated for the Two Paintings and his limited to compensatory damages (not less than the purchase price of $1,000,000), plus interest, punitive damages, and costs, expenses, disbursements, and reasonable attorneys' fees, then the distributees of Henry Platt's Estate, including Wathne, the Trust and

John Does 6-25 defendants, are liable to Michaan in *quantum meruit* based upon the undisputed facts that:

    a.  Michaan had an express contract from Henry Platt to buy the Two Paintings that should have given him clear title such that he could keep or resell the Two Paintings at his election;

    b.  Michaan had an express contract from Henry Platt to buy the Two Paintings that represented and warranted that Henry Platt had clear marketable title to the Two Paintings that he was delivering to Michaan;

    c.  Michaan did not get clear title to the Two Paintings;

    d.  The Trust is being enriched because of this at Michaan's expense; and

    e.  Equity and good conscience require they make restitution to Michaan.

## PRAYER FOR RELIEF

WHEREFORE, third-party plaintiff Allen Michaan respectfully request that the Court enter a judgment against all defendants awarding him:

    A.  Compensatory damages in an amount to be determined at trial, but not less than $1,000,000, plus interest;

    B.  Punitive damages in an amount to be determined at trial on Michaan's Fourth Cause of Action as a result of Henry Platt's willful and intentional tortious misconduct;

    C.  In the alternative to the above, rescission of the purchase of the Two Paintings;

    D.  Costs, expenses, disbursements, and reasonable attorneys' fees in an amount to be awarded at trial; and

E.  Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Third-party plaintiff Allen Michaan hereby requests a trial by jury on all claims so triable.

Dated: January 7, 2022

Respectfully Submitted,

/s/ *Jeffrey I.D. Lewis*_____
Jeffrey I.D. Lewis
FOLEY HOAG, LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019
Tel: 646-927-5500
jidlewis@foleyhoag.com

*AND*

Charles D. Schmerler
50 West Street
New York, New York 10006
cschmerler@gmail.com
Tel: 917-770-0275

*Attorneys for Defendant Allen Michaan*